FILED
2021 May-18  AM 10:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| KARRON JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| WESTROCK SERVICES, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | JURY DEMAND |

## COMPLAINT

### Introduction

This is an action under Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981, the Age Discrimination in Employment Act, and supplemental state law claims to correct unlawful employment practices on the basis of gender (female), race (Black), age, and retaliation, and to provide appropriate relief to Karron Johnson, who was adversely affected by such practices because of gender, race, age, and retaliation by defendant WestRock Services, Inc., and who has suffered damages as a result.

## Jurisdiction and Venue

1.      Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1) ("Title VII"), 42 U.S.C §1981, and the Age Discrimination in Employment Act.  This Court has supplemental jurisdiction over Ms. Johnson's state law claims pursuant to 28 U.S. Code § 1367 in that they are so related to claims in the action that they form part of the same case or controversy.

2.      The employment practices alleged to be unlawful occurred in Greene County, Alabama, in the Western Division of the Northern District of Alabama.

## Parties

3.      Plaintiff, Karron Johnson ("Plaintiff" or "Ms. Johnson") is an adult female citizen of the United States, a resident of the State of Alabama, and a former employee of defendant.

4.      At all relevant times, defendant, WestRock Services, L.L.C., ("Defendant" or "WestRock") has continuously been a Georgia corporation doing business in Alabama, and has over fifty thousand (50,000) employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

<u>Factual Allegations</u>

6.      Ms. Johnson began working for WestRock in August of 1998, as an inspector, feeder, and catcher (customarily called an "IFC"), in the plant's finishing department.

7.      Blacks make up seventy-five percent of the labor force at WestRock's Eutaw facility.

8.      Ms. Johnson soon moved to the cutting department when a position came open.

9.       Working conditions in the cutting department are better than in the finishing department.

10.     Approximately 2001, Ms. Johnson began driving a forklift in the warehouse.  This new job for her came with a pay raise.

11.     Blacks hold less than twenty-five percent of the management positions at WestRock's Eutaw facility.

12.     Ms. Johnson became the only Black female in management.

13.     Approximately 2005, Dan Williams gave Ms. Johnson her first supervisory role for WestRock when he moved her to the quality control department.

14.     In quality control, Ms. Johnson directly supervised approximately ten people at any given time.

15.     Dan Williams's secretary at that time, Rhonda Thomas, told Karron Johnson that Dan Williams promoted Ms. Johnson to the quality control position in order to harass and intimidate Bessie Roberson into quitting.

16.     Bessie Roberson is a Black female, and quit almost immediately after Ms. Johnson was moved to quality control.

17.     About 2006, Mike Strickland, a white male, was hired to run the finishing department.  Mike Strickland had no work experience with WestRock.

18.     Also in 2006, Dan Williams promoted Karron Johnson to overall supervisor of the entire plant's second shift, including the cutting department, the finishing department, the quality control department, the warehouse, maintenance, and all other plant functions.

19.     The second shift begins at 3:00 p.m. and ends at 11:00 p.m.

20.     As second shift supervisor, Ms. Johnson was responsible for approximately eighty employees at any given time.

21.    Ms. Johnson's rate of pay did not change with her promotion to second shift supervisor.

22.    Approximately 2010, Daniel Pate, a white male, was hired by WestRock to supervise the third shift at the plant.  Daniel Pate had no work experience with WestRock.

23.    Mark Dingers, assistant general manager, a white male, required Ms. Johnson to train Daniel Pate.

24.    Not until Daniel Pate was hired did WestRock increase Ms. Johnson's rate of pay.

25.    Ms. Johnson's new rate of pay was equivalent to Daniel Pate's starting pay.

26.    About 2013, Mike Strickland needed employees in the finishing department.

27.    Also about 2013, Ken Gordon was plant superintendent, responsible for hiring.

28.    Ms. Johnson overheard Mike Strickland tell Ken Gordon to hire white employees, not Black employees.  Mike Strickland told Ken Gordon "We don't need any more _____," using a derogatory term euphemistically known as the "n-word."

29.     Not long after that incident, Greg Barnes, Tommy Upchurch, Mike Strickland and Ms. Johnson were meeting, when Mike Strickland said "We do not need any more _____ in the plant," using a derogatory term euphemistically known as the "n-word."

30.     Tommy Upchurch is a white male, and at the time was in charge of the die shop.

31.     Greg Barnes is a white male, and at the time was a "lead man" in the finishing department.

32.     Barnes reported this incident to WestRock's human resources department, and WestRock terminated Mike Strickland as a result.

33.     Dan Williams told Ms. Johnson that Barnes should not have reported the incident.

34.     Dan Williams did not fire Strickland.

35.     Given a choice, Dan Williams would not have fired Strickland.

36.     WestRock's home office required Strickland's termination.

37.     After Strickland's termination, Ken Gordon became finishing manager.

38.     In 2014, Ms. Johnson was promoted from second shift supervisor to manager of the finishing department, now responsible for all three shifts in this department.

39.     As finishing manager, Ms. Johnson supervised approximately 120 employees.

40.     Beginning April 3, 2017, Ms. Johnson was placed on salary.

41.     After Ms. Johnson was placed on salary, she began to receive telephone calls around the clock, which interfered with her ability to sleep and required her to go to the plant without notice.  These calls came from Darlene Chilcutt, Daniel Pate, Dan Williams, Taylor Borunda, and various lead men in the finishing department.

42.     During the two years that Ms. Johnson was manager of the finishing department and not on salary, she did not receive the telephone calls described in the previous paragraph.

43.     In 2017, Ms. Johnson went into Daniel Pate's office to get a boxcutter for an employee.

44.     During this encounter, Daniel Pate said to her "We don't need no more broke-ass _____s around here like them out there on the floor," using a derogatory term euphemistically known as the "n-word."

45.     Ms. Johnson went to Darlene Chilcutt's office to make a complaint about Pate's comment in the previous paragraph, but Ms. Chilcutt was not in her office.

46.     In early 2018, Ralph Boyer, a white male, came to work at WestRock's facility in Eutaw as production manager.

47.     In July 2018, Dan Williams told Greg Barnes that Boyer and Ms. Johnson were involved in an affair.

48.     At the time, Dan Williams had no factual basis to make such accusation.

49.     At the time, Dan Williams had no legitimate business purpose in making such accusation.

50.     Boyer complained to Darnell Harris, a black male and a supervisor in human resources, about Williams's actions.

51.     Separately, Ms. Johnson also complained to Mr. Harris about Williams's actions, which included Williams's conduct in asking her whether she was having an affair with Boyer.

52.     Ms. Johnson never received any information regarding whether any action was taken to discipline Williams for making this false and defamatory statement.

53.     In late summer and early fall of 2018, Ralph Boyer told Ms. Johnson on several occasions that Darlene Chilcutt had said that she hated Black people.

54.     Ed Newhouser (sp?), a white male, worked in the maintenance department.

55.     In fall of 2018, Ed Newhouser (sp?) told Ms. Johnson that Darlene Chilcutt had said to him that she did not like Blacks or Ms. Johnson.

56.     At a "performance excellence" meeting attended by Ms. Johnson in fall of 2018, Daniel Pate publicly stated that "all Blacks are uneducated and dumb, just like James Moore."

57.     In September of 2018, a white male employee who was commonly referred to as "Plywood," used a derogatory term euphemistically known as the "n-word" in the presence of Monica Lee, Tommy Upchurch, Joe Lapinski, Ms. Johnson, and others.

58.     About three days later, Monica Lee, a Black female, complained to Dan Williams, Darnell Harris, and Taylor Borunda in human resources about Plywood's use of the derogatory term euphemistically known as the "n-word."

59.     Ms. Lee told Ms. Johnson that Dan Williams was angry that Ms. Lee made the complaint against Plywood and told Ms. Lee that her complaint was untimely.

60.     About October 2018, Dan Williams told Ms. Johnson directly that he was going to replace her with a younger person, a white male.

61.     At the time Dan Williams made the statement described in the preceding paragraph, Ms. Johnson had requested a written description of her job because she was unable to sleep.

62.     Dan Williams gave to Ms. Johnson a job description she could not possibly perform.

63.     Ms. Johnson forwarded the job description to Darnell Harris.  Darnell Harris expressly agreed with Ms. Johnson that no one person could perform the job description, and told Ms. Johnson to "do what she could do."

64.     Later during fall of 2018, Dan Williams told Ms. Johnson that "all Black people do not want to move up in life, they just want an EBT card."

65.     Finally, in November 2018, Ms. Johnson called Darnell Harris and made a formal complaint of discrimination based upon race, sex, and age.

66.     Ms. Johnson related many of the above facts to Mr. Harris.

67.     During that telephone conversation, Mr. Harris said that he was writing down everything she said and making a formal complaint for her.

68.     Mr. Harris never communicated further with Ms. Johnson regarding her complaints of discrimination.

69.     After Ms. Johnson made this formal complaint to Darnell Harris, Dan Williams told Ms. Johnson that "you can call 'Dumbnell.' because we have been friends for thirty years and it's not going to do any good."

70.     Ms. Johnson received no further communication from anyone about the status of her complaint.

71.    In July 2019, Ms. Johnson was demoted to managing only part of the operation of the warehouse.

72.    Between the time of her formal complaint and her demotion, Ms. Johnson was called to Ms. Chilcutt's office an average of at least three days each week, sometimes more.

73.    During this period of time, no other managers were being called to Ms. Chilcutt's office.

74.    During these meetings, Ms. Chilcutt always made certain that Ms. Johnson's telephone was both present and turned off.

75.    On occasions when Ms. Johnson did not have her phone in her possession, Ms. Chilcutt required her to go get it before the meeting could take place.  Ms. Chilcutt then took possession of the phone, turned it off, and placed it on her desk until the meeting was over.

76.    During these meetings, Ms. Chilcutt made various accusations regarding Ms. Johnson's ineffectiveness as the finishing department manager.

77.    Never during these meetings did Ms. Chilcutt offer to assist Ms. Johnson or inquire of Ms. Johnson how she might provide assistance.

78.    Ms. Johnson's personnel file contains no record of these meetings.

79.    Also during the time between her complaint and her demotion, Dan Williams accused Ms. Johnson of using drugs.

80.     At the time, Dan Williams had no factual basis to make such accusation.

81.     At the time, Dan Williams had no legitimate business purpose in making such accusation.

82.     Ralph Boyer told Ms. Johnson that Dan Williams told Taylor Borunda, Cammie Borunda, Joe Lapinsky, Tammy Grant, and Lonnie Stone that Ms. Johnson was using drugs.

83.     This accusation was false, and Ms. Johnson suffered embarrassment and humiliation as a result.

84.     Not long after the incident involving Plywood, Greg Barnes, a white male who knew about these frequent meetings, told Ms. Johnson that he had told Dan Williams and Darlene Chilcutt that they needed "ease up off of" Ms. Johnson, and instead, focus on Plywood's use of the racial epithet.

85.     In Darlene Chilcutt's last meeting with Ms. Johnson, Chilcutt told her that Dan Williams wanted Chilcutt to fire Johnson, but that Chilcutt was going to allow Johnson to write a letter requesting demotion to a job in the warehouse.

86.     Ms. Chilcutt told Ms. Johnson that Johnson would be terminated unless she wrote such a letter.

87.     Working conditions in the warehouse are much worse than working conditions as the manager of the finishing department.

88.     The warehouse position is a dead-end job in a dirty warehouse, with no opportunity for advancement.

89.     Ms. Johnson wrote the letter out of fear of losing her job and income.

90.     Ms. Johnson was replaced as finishing manager by Jason Wilson, a white male about twenty-five years of age.

91.     As finishing manager, Jason Wilson did not receive telephone calls at night on a regular basis.

92.     About October 2019, Jason Crouch, a white male about thirty-five years old, assumed the finishing manager position, and was immediately provided a secretary.

93.     In her job as a warehouse manager, Ms. Johnson was disciplined for an incident that occurred in October 2019, when warehouse employees loaded product on a truck incorrectly.

94.     The truck went to Lebanon with a load intended for Chattanooga.

95.     As a result, the customer in Lebanon did not receive its order.

96.     The truck immediately returned to Eutaw, where it was correctly loaded and dispatched to Lebanon.

97.     Reginald Walker instructed Ms. Johnson to investigate the cause of the mixup.

98.   Ms. Johnson reported the result of her investigation to Reginald Walker.

99.   Ms. Johnson was disciplined for investigating the incident.

100.   No company policy prohibits Ms. Johnson from investigating such incidents in her capacity as a warehouse manager.

101.   Ms. Johnson was disciplined for an incident that occurred in November 2019, when warehouse employees failed to load certain product on a truck.

102.   While she was a warehouse manager, Ms. Johnson was disciplined for personally investigating the incident.

103.   No company policy prohibits her from investigating such incidents in her capacity as a warehouse manager.

104.   WestRock terminated the employment of Ms. Johnson on or about February 4, 2020.

105.   Ms. Johnson contacted the EEOC on February 4, 2020 in order to file a charge of discrimination.

106.   Ms. Johnson filed a charge of discrimination with the EEOC on May 22, 2020.

107.   A copy of the charge is attached to this complaint as an exhibit, and incorporated herein as if fully set forth.

108.   Ms. Johnson received a notice of right to sue from the EEOC on February 17, 2021, which is attached hereto and made a part hereof.

<u>Count One:  Sex Discrimination</u>

<u>Sexual Harassment in Violation of Title VII</u>

109.   As explained above, WestRock discriminated against and harassed Ms. Johnson on the basis of her sex in violation of Title VII.

110.   The actions of Defendant WestRock created a hostile environment for Ms. Johnson based on her sex which was continuous in nature during her employment.

111.   Defendant WestRock engaged in the practices herein with malice and/or reckless indifference to Ms. Johnson's federal rights.

112.   As a proximate result and consequence of Defendant WestRock's actions, Ms. Johnson suffered pain, financial damage, embarrassment, trauma and humiliation, loss of reputation, emotional distress, and mental anguish for which she claims damages.

113.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be

available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

Count Two: Sex Discrimination

Sex Discrimination in Violation of Title VII

114.   As explained above, WestRock discriminated against Ms. Johnson on the basis of her sex in violation of Title VII.

115.   WestRock intentionally discriminated against Ms. Johnson on the basis of her sex with regard to job assignments, discipline, demotions, termination of employment and other terms and conditions of employment, in violation of Title VII.

116.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

117.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  The Plaintiff requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

<u>Count Three</u>

<u>Retaliation (Harassment) in Violation of Title VII</u>

118.   As explained above, Defendant WestRock discriminated against Ms. Johnson on the basis of her sex.

119.   Ms. Johnson was retaliated against for complaining about sexual harassment by the Defendant in violation of Title VII.

120.   Ms. Johnson engaged in protected opposition to illegal discrimination when she complained about sexual harassment to her supervisors and/or WestRock.

121.   The actions of Defendant WestRock created a hostile environment for Ms. Johnson which was based on retaliation and was continuous in nature during her employment.

122.   Defendant WestRock discriminated against Ms. Johnson by creating and tolerating a retaliatory hostile work environment which led to her demotion and ultimately her termination from employment in violation of Title VII.

123.   Defendant WestRock engaged in the practices herein with malice and/or reckless indifference to her federal rights.

124.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

125.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## Count Four

### Retaliation (Demotion/Termination) in Violation of Title VII

126.   As explained above, Defendant WestRock discriminated against Ms. Johnson on the basis of her sex.

127.   Ms. Johnson was retaliated against for complaining about sexual discrimination by the Defendant in violation of Title VII.

128.   Ms. Johnson engaged in protected opposition to illegal discrimination when she complained about sexual discrimination created by her supervisors and/or WestRock.

129.   WestRock intentionally discriminated against Ms. Johnson on the basis of retaliation with regard to job assignments, discipline, demotions, termination of employment and other terms and conditions of employment, in violation of Title VII.

130.   Defendant WestRock discriminated against Ms. Johnson by creating and tolerating a retaliatory hostile work environment, which led her demotion and ultimately her termination from employment in violation of Title VII.

131.   Defendant WestRock engaged in the practices herein with malice and/or reckless indifference to her federal rights.

132.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

133.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## Count Five

## Age Discrimination in Employment Act

134.   As explained above, Ms. Johnson was discriminated against on the basis of her age.

135.   Dan Williams told Ms. Johnson that he was going to replace her with a younger employee not in the protected age group and he did in fact fire Ms. Johnson and replace her with someone who is younger than Ms. Johnson and not in the protected age group.

136.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

137.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## Count Six

## Age Discrimination in Employment Retaliation

138.   As explained above, Defendant WestRock retaliated against Ms. Johnson because she complained of age discrimination.

139.   Ms. Johnson was retaliated against for complaining about age discrimination by the Defendant in violation of Title VII.

140.   Ms. Johnson engaged in protected opposition to illegal discrimination when she complained about age discrimination created by Mr. Williams which was condoned and ratified by WestRock.

141.   WestRock intentionally discriminated against Ms. Johnson on the basis of retaliation with regard to job assignments, discipline, demotions, termination of employment and other terms and conditions of employment, in violation of the ADEA.

142.   Defendant WestRock discriminated against Ms. Johnson by creating and tolerating a retaliatory hostile work environment, which led her demotion and ultimately her termination from employment in violation of the ADEA.

143.   Defendant WestRock engaged in the practices herein with malice and/or reckless indifference to her federal rights.

144.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

145.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be

available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

Count Seven:  Race Discrimination

Race Discrimination (Harassment) in Violation of 42 U.S.C. 1981

146.   As explained above, WestRock discriminated against and harassed Ms. Johnson on the basis of her race in violation of 42 U.S.C §1981.

147.   The actions of Defendant WestRock created a racially hostile environment for Ms. Johnson based on her race which was continuous in nature during her employment.  The hostile environment was a continuing violation of 42 U.S.C. §1981.

148.   Defendant WestRock engaged in the practices herein with malice and/or reckless indifference to Ms. Johnson's federal rights.

149.   As a proximate result and consequence of Defendant WestRock's actions, Ms. Johnson suffered pain, financial damage, embarrassment, trauma and humiliation, loss of reputation, emotional distress, and mental anguish for which she claims damages.

150.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of

these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

<u>Count Eight:  Race Discrimination</u>

<u>Race Discrimination in Violation of 42 U.S.C. 1981</u>

151.   As explained above, WestRock discriminated against Ms. Johnson on the basis of her race in violation of 42 U.S.C §1981.

152.   WestRock intentionally discriminated against Ms. Johnson on the basis of her race with regard to job assignments, discipline, demotions, termination of employment and other terms and conditions of employment, in violation of 42 U.S.C. §1981.

153.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

154.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  The Plaintiff requests all other relief that may be

available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## Count Nine

### Retaliation (Harassment) in Violation of 42 U.S.C. 1981

155.   As explained above, Defendant WestRock discriminated against Ms. Johnson on the basis of her race.

156.   Ms. Johnson was retaliated against for complaining about racial discrimination by Defendant in violation of 42 U.S.C. §1981.

157.   Ms. Johnson engaged in protected opposition to illegal discrimination when she complained about racial discrimination created by her supervisors which was condoned and ratified by WestRock.

158.   The actions of Defendant WestRock created a racially hostile environment for Ms. Johnson which was based on retaliation and was continuous in nature during her employment.  The hostile work environment was a continuing violation of 42 U.S.C. §1981.

159.   Defendant WestRock discriminated against Ms. Johnson by creating and tolerating a retaliatory hostile work environment, which led her demotion and ultimately her termination from employment in violation of 42 U.S.C. §1981.

160.   Defendant WestRock engaged in the practices herein with malice and/or reckless indifference to her federal rights.

161.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

162.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

Count Ten

Retaliation in Violation of 42 U.S.C. 1981

163.   As explained above, Defendant WestRock discriminated against Ms. Johnson on the basis of her race.

164.   Ms. Johnson was retaliated against for complaining about race discrimination by the Defendant in violation of 42 U.S.C. §1981.

165.   Ms. Johnson engaged in protected opposition to illegal discrimination when she complained about race discrimination created by her supervisors and/or WestRock.

166.   WestRock intentionally discriminated against Ms. Johnson on the basis of retaliation with regard to job assignments, discipline, demotions, termination of employment and other terms and conditions of employment, in violation of 42 U.S.C. §1981.

167.   Defendant WestRock discriminated against Ms. Johnson by creating and tolerating a retaliatory hostile work environment, which led her demotion and ultimately her termination from employment in violation of 42 U.S.C. §1981.

168.   Defendant WestRock engaged in the practices herein with malice and/or reckless indifference to her federal rights.

169.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

170.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

Count Eleven

Negligent and Wanton Training, Supervision, Retention, and Termination

171.   This is a claim arising under the law of the State of Alabama to redress the negligent and/or wanton, hiring, supervision, training, and retention of the supervisors who harassed and terminated Ms. Johnson.

172.   The Court has supplemental jurisdiction over Ms. Johnson's state law claim of negligent and/or wanton, training, supervision, retention and demotion and termination because all such claims are so related that they form part of the same case or controversy.

173.   As explained above, WestRock discriminated against Ms. Johnson on the basis of her sex, age and race, retaliated against her, demoted her, and then ultimately terminated Ms. Johnson.

174.   WestRock had a duty to provide Ms. Johnson with a reasonably safe work environment and to follow its own policies and procedures prohibiting sex harassment, sex discrimination, age discrimination, race discrimination, racial harassment, and retaliation under Title VII, the ADEA and 42 U.S.C, §1981 and to protect her from such violations and retaliation in the workplace.  Further, WestRock had a duty to follow the law.

175.   WestRock failed to establish an adequate policy against discrimination, harassment and retaliation, failed to implement such a policy

consistently, failed to regularly and clearly announce, publish, and enforce such policies to the detriment of Ms. Johnson.

176.   WestRock negligently or wantonly failed to adequately educate, supervise, train, and/or retain its managers, supervisors, and employees on harassment and discrimination.

177.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

178.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter its judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

Count Twelve

Outrage

179.   This is a claim arising under the law of the State of Alabama to redress the outrageous behavior of Defendant WestRock.

180.   The Court has supplemental jurisdiction over Ms. Johnson's state law claim of Outrage because such claims are so related that they form part of the same case or controversy.

181.   As explained above, WestRock and WestRock's supervisors harassed Ms. Johnson on the basis of her sex, age and race and retaliated against her and demoted and ultimately terminated the employment of Ms. Johnson.

182.   WestRock had a duty to provide Ms. Johnson with a reasonably safe work environment and to follow its own policies and procedures prohibiting sex harassment, sex discrimination, age discrimination, racial harassment, race discrimination, and discriminatory retaliation under Title VII, the ADEA and 42 U.S.C, §1981 and to protect her from such violations and retaliation in the workplace.  Further, WestRock had a duty to follow the law.

183.   WestRock failed to establish an adequate policy against discrimination, harassment and retaliation, failed to implement such a policy consistently, and failed to regularly and clearly monitor, follow, and enforce such policies to the detriment of Ms. Johnson.

184.   WestRock's actions cannot be tolerated in a civilized society.

185.   As a proximate result of WestRock's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

186.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

Count Thirteen

Defamation

187.   This is a claim arising under the law of the State of Alabama to redress the defamation of Ms. Johnson.

188.   The Court has supplemental jurisdiction over Ms. Johnson's state law claim of defamation because all such claims are so related that they form part of the same case or controversy.

189.   As explained above, Mr. Williams defamed Ms. Johnson when he accused her of having an affair with Mr. Boyer and of using illegal drugs, and he published these false statements, and WestRock condoned and ratified Mr. Williams's actions.

190.   As a proximate result of Mr. Williams's conduct, Ms. Johnson was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

191.   Ms. Johnson seeks reinstatement and prays this Honorable Court enter a judgment against WestRock for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims against WestRock.  Ms. Johnson requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

WHEREFORE, plaintiff requests this Honorable Court enter its judgment for the following relief:

A.   Grant Ms. Johnson a declaratory judgment holding that the actions of the Defendant described hereinabove violated and continue to violate her rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as amended, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981, and the ADEA and for retaliation violating her civil rights;

B.   Grant Ms. Johnson a permanent injunction enjoining the Defendant, their agents, successors, employees, attorneys and those acting in concert with the Defendant and on the Defendant's behalf from continuing to violate Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981, the ADEA and for retaliation;

      C.    Issue an injunction ordering WestRock not to engage in discrimination and acts which violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as amended, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981, the ADEA and to prohibit WestRock from retaliation;

      D.    Grant Ms. Johnson an order requiring the Defendant to make her whole by reinstating her in the position she would have occupied in the absence of the discrimination as set out herein, including backpay (plus interest), front pay, retirement and other benefits, compensatory, liquidated, nominal and/or punitive damages; and

      E.    Ms. Johnson further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses.

/s/ John E. McCulley
_____
John E. McCulley
ASB-1374-U76J
Attorney for Plaintiff

JOHN E. McCULLEY, P. C.
601 Greensboro Ave. – Ste. 200
Tuscaloosa, AL 35401
P. O. Box 20576
Tuscaloosa, AL 35402
205-345-6773
johnemcculley@gmail.com

/s/ Daniel A. Hannan

_____

Daniel A. Hannan, L.L.C.
ASB-4492-N77D
Attorney for Plaintiff

DANIEL A. HANNAN, L.L.C.
P.O. Box 1286
Mobile, AL. 36633
Work:       251-289-1326
Cell:        251-654-1360
Fax:        251-252-1331
dahlawyer@hotmail.com
hannanlaw@gmail.com

## JURY DEMAND

Plaintiff demands trial by jury.

/s/ John E. McCulley

_____

John E. McCulley

Defendant's service address:
WestRock Services, L.L.C.
C/O Corporation Services Co., Inc.
641 So. Lawrence St.
Montgomery, AL 36104